**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

FIRST NATIONAL BANK OF FULDA, MINNESOTA,

Plaintiff,

vs.

BANCINSURE, INC.,

Defendant.

Civil No. 00-2002 (DDA/FLN)

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

Mackall, Crounse & Moore, PLC, by TIMOTHY D. MORATZKA and PATRICK C. SUMMERS, Minneapolis, Minnesota, appeared on behalf of Plaintiff.

Lang, Pauly, Gregerson & Rosow, Ltd., by JOSEPH A. NILAN, Minneapolis, Minnesota, appeared on behalf of Defendant.

---

The question in this case is whether Defendant BancInsure, Inc., ("BancInsure") must insure and indemnify Plaintiff First National Bank of Fulda, Minnesota ("the Bank") for liability and legal expenses the Bank sustained and will sustain in connection with an ongoing lawsuit. The parties, more particularly, dispute whether a financial institution bond and rider that BancInsure issued to the Bank covers the losses the Bank claims. The Bank has moved for summary judgment, which is appropriate if no genuine issue of material fact exists and if the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). For the reasons stated in this Order, the Court will deny the Bank's motion.

I.

Douglas Wessels is a former employee of the Bank. Between 1993 and 1997, Wessels used his position as a loan officer with the Bank to obtain funds for his own use from operating lines of credit the Bank extended to various borrowers. One of the lines of credit from which Wessels embezzled funds was a farm operating loan provided to Stanley and Elwood Boe ("the Boes"). After the Bank discovered Wessels' thefts, Wessels was indicted by a federal grand jury

FILED DEC 21 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

in April 1997 and eventually entered a guilty plea to a charge of bank embezzlement. The Bank reimbursed its borrowers, including the Boes, for the funds Wessels had taken. The Bank submitted a claim to BancInsure for the reimbursed funds along with interest, fees, and related charges. BancInsure agreed that its bond and rider covered those losses, and BancInsure paid the Bank's claim for those losses in August 1997.

In September 1997, the Fredricksburg Farmers Cooperative ("the Co-op"), one of the Boes' creditors, commenced suit against the Boes and the Bank in Iowa state court ("the Iowa litigation"). The Co-op alleged, inter alia, that the Bank through Wessels in early 1997 fraudulently represented that the Bank would continue to provide financing to the Boes and otherwise would assure the Co-op of payment on the Boes' account. The Boes filed a cross-claim against the Bank in which the Boes also alleged misrepresentations by Wessels. Whether the misrepresentations alleged in the Iowa litigation were connected with Wessels' embezzlement scheme is not clear from this record[1]. The Bank settled the Co-op's claim prior to trial, and the state court dismissed some of the Boes' claims against the bank on summary judgment. The Boes' remaining claims against the Bank proceeded to trial, which resulted in a jury verdict in favor of the Bank. The Iowa Court of Appeals recently reversed that verdict in part and remanded the case for a new trial. Fredricksburg Farmers Coop. v. Stanley and Elwood Farms, No. 00-0278, 2001 WL 1580488 (Iowa Ct.App. Dec. 12, 2001).

The Bank submitted claims to BancInsure for reimbursement of its settlement payment to the Co-op and for its ongoing costs of defense in the Iowa litigation. BancInsure denied coverage for all claims related to the Iowa litigation on the ground that those losses were outside the scope of BancInsure's bond. After the denial of coverage, the Bank brought this action

---

[1] A letter to one of BancInsure's claims managers (Moratzka Aff. Ex. F.) alludes to a December 4, 1998, deposition at which Wessels reportedly testified that "his handling of the Boe loan account was motivated so as to avoid discovery of his embezzlement scheme." Id. at 2. That deposition testimony, however, is not in the record. The testimony from Wessels in the record, an affidavit and earlier sworn statements, indicates that Wessels' motivation in the transactions underlying the Iowa litigation was to protect the Bank's interest and not to benefit himself.

against BancInsure. The Bank seeks a declaration that BancInsure's bond and rider provide coverage for the losses the Bank sustained in the Iowa litigation and a judgment against BancInsure for breach of contract.

II.

BancInsure's bond provides coverage for "[l]oss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others. Such dishonest or fraudulent acts must be committed by the Employee with the manifest intent: (a) to cause the Insured to sustain such loss; and (b) to obtain financial benefit for the Employee or another person or entity." (Moratzka Aff. Ex. A.) The bond includes a rider requiring BancInsure to indemnify the Bank against attorney fees and costs of defense for claims "which, if established against [the Bank] would constitute a collectible loss" under the bond. Id. Wessels undisputedly embezzled money from the Bank with the intent to cause a loss to the Bank and to obtain financial benefit for himself. The Bank contends that the Iowa litigation is a direct consequence of Wessels' embezzlement scheme and that Wessels accordingly acted with the "manifest intent" to cause the Bank's losses in the Iowa litigation. BancInsure, on the other hand, argues in essence that the actions of Wessels at issue in the Iowa litigation are not connected to Wessels' embezzlement scheme to such a degree as to establish Wessels' manifest intent as a matter of law.

The concept of "manifest intent" in this context is not well-defined. Cases in this Circuit, however, when construing bond provisions identical to those at issue here have considered "manifest intent" to be an intent that is obvious based on the offending bank employee's conduct. See BancInsure, Inc. v. BNC Nat'l Bank, 263 F.3d 766, 770 (8th Cir. 2001) (applying North Dakota law and stating that "manifest intent" is intent that is "obvious" from an examination of the available facts); First Dakota Nat'l Bank v. St. Paul Fire & Marine Ins. Co., 2 F.3d 801, 813 (8th Cir. 1993) (applying South Dakota law and defining "manifest intent" as "clearly evident intent"). Cf. Black's Law Dictionary 814 (7th ed. 1999) (defining "manifest intent" as intent "that is apparent or obvious based on the available circumstantial evidence, even if direct

evidence of intent is not available"). That definition is consistent with Minnesota case law, which holds that a bank employee manifestly intends to cause a loss to the bank when such a loss is "a natural consequence" of the employee's actions. Transamerica Ins. Co. v. FDIC, 465 N.W.2d 713, 716 (Minn.Ct.App. 1991), aff'd in part and rev'd in part on other grounds, 489 N.W.2d 224 (Minn. 1992). The bank employee in Transamerica fraudulently had taken bank funds, 465 N.W.2d at 714, and the Transamerica court recognized that an employee who steals a bank's funds necessarily intends to cause a loss to the bank and to benefit himself at the bank's expense. Id. at 716. The same principle applies by extension to acts of employee fraud that expose a bank to third party liability. If a bank employee fraudulently seeks to benefit himself through acts that necessarily make the bank liable to a third party, the bank suffers a loss just as if the employee had taken the bank's funds for his own use. See First Am. State Bank v. Continental Ins. Co., 897 F.2d 319, 326 (8th Cir. 1990) (applying Iowa law).

Although the Bank has shown that Wessels' embezzlement of funds from the Boes caused the Bank to sustain a loss, the Bank has not established definitively that the actions of Wessels at issue in the Iowa litigation were part of Wessels' embezzlement scheme. The Bank suggests that Wessels offered to extend additional credit to the Boes in early 1997 in order to avoid discovery of his thefts from the Boes' account. That may be a permissible inference given that Wessels' embezzlement scheme extended through March 1997 and that an investigation of irregularities in the Boes' account could have exposed Wessels' thefts. But the Bank's conclusion is not obvious from the available evidence, especially in light of Wessels' testimony that his meetings with the Boes and the Co-op had nothing to do with his embezzlement scheme. The Bank discounts Wessels' testimony as immaterial, arguing that Transamerica establishes a "purely objective" evidentiary standard which precludes consideration of Wessels' state of mind in determining manifest intent. That position overstates Transamerica's holding. Transamerica stands for the proposition that evidence of objective acts alone may be sufficient to establish manifest intent, but no Minnesota case has extended that reasoning to hold that evidence of an employee's subjective intention never is relevant to the issue of manifest intent.

BancInsure's liability, furthermore, is not apparent even without considering Wessels' testimony. Considering the evidence in the manner most favorable to the Bank, the objective facts show, at most, that Wessels misrepresented the Bank's willingness to extend credit to the Boes. The existence of such a misrepresentation says nothing about whether Wessels made the misrepresentation to serve his own interest at the expense of the Bank. BancInsure's bond covers losses directly resulting[2] from Wessels' embezzlement scheme, not losses Wessels caused simply through the mishandling of a customer's account, and the Bank's losses in the Iowa litigation do not fall clearly into either category.

III.

For the foregoing reasons, the Court hereby **ORDERS** that the Bank's motion for summary judgment is DENIED.

Dated: December 21, 2001

DONALD D. ALSOP, Senior Judge
United States District Court

---

[2] Although BancInsure argues that the bond's "directly resulting" language requires a test of causation that is more rigorous than the traditional proximate cause standard, at least one case in this District has equated the bond's standard of proof with the usual concept of proximate causation. Mid-America Bank of Chaska v. Am. Cas. Co. of Reading, Pa., 745 F.Supp. 1480, 1485 (D. Minn. 1990).